# GROFF *v.* MILLER.

CODE, CONSTRUCTION OF; APPEALS IN JUSTICE OF THE PEACE CASES.

1. In construing the code of the District of Columbia, the various sections thereof should be regarded as simultaneous legislative expressions and should be read together as one act and harmonized, where the court is satisfied that the literal meaning of apparently inconsistent sections does not convey the intention of Congress.

2. Although sections 82 and 226 of the code of this District, as originally enacted, are apparently inconsistent and irreconcilable, as section 82 provides that " in no case appealed from a justice of the peace shall there be any further appeal from the judgment of the circuit court," while section 226 provides for an appeal to the Court of Appeals from certain orders and judgments " including any final order or judgment in any case heard on appeal from a justice of the peace," the proper construction to be placed upon section 226, in view of other provisions of the code, is that the appeals in justice of the peace cases there provided for, relate and apply only to final orders or judgments of the circuit court in cases removed to that court by writs of *certiorari* issued by it to justices of the peace; while section 82 applies to, and prohibits appeals in cases tried *de novo* in the circuit court upon an appeal from justices of the peace; and an appeal to this court from a judgment of the lower court in a case so tried by it on an appeal from a justice of the peace, was accordingly *dismissed.*

3. Where, after the dismissal by this court of such an appeal, a motion by the appellant was made for a rehearing upon the ground that the amendatory act of Congress of June 30, 1902, repealed section 82 of the code and that this was a Congressional construction of section 226 to the effect that the right of appeal was intended to be given to this court from any final order or judgment in any case heard in the lower court on an appeal from a justice of the peace, the motion was *denied*, for the reason that, even if such Congressional construction was to be accepted as to the meaning originally intended by section 226, then from the fact that it was deemed necessary to repeal section 82, in order to give effect to section 226, it would follow that while both sections

remained unrepealed they neutralized and frustrated each other, and neither could be allowed effective operation, which would leave the law as it existed prior to the time the code went into effect, that is to say, without any effective statutory right of appeal to this court in such cases.

No. 1199. Submitted June 5, 1902. Decided June 23, 1902.

HEARING on a motion by the appellee to dismiss an appeal from a judgment of the Supreme Court of the District of Columbia in a cause tried in that court upon an appeal from a justice of the peace. *Granted.*

The facts are sufficiently stated in the opinion.

*Mr. Wm. Henry White, Mr. Harry G. Kimball,* and *Mr. Jesse E. Potbury* for the motion.

*Mr. Samuel Maddox* opposed:

It may be that the provisions of section 226 are irreconcilable with a previous section of the code, namely, Sec. 82, but the rule of construction is well settled that in such cases the " last words stand, and others which cannot stand with them go to the ground." *Packer* v. *Railroad Co.,* 19 Pa. St. 211; *Brown* v. *County Commissioners,* 21 Pa. St. 42; *State ex rel. Attorney-General* v. *Heidorn,* 74 Mo. 410; *Ex parte Ray & Defoe,* 45 Ala. 15; Bacon's Abr., tit. Statutes D; Endlich on Interp. of Stat., Secs. 182, 183; *District of Columbia* v. *Hutton,* 143 U. S. 18; *United States* v. *Tyner,* 11 Wall. 88.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

In this case there is a motion entered to dismiss the appeal, upon the ground that there is no jurisdiction in this court to hear and decide the case.

The case was instituted before a justice of the peace by whom it was tried and determined, and a judgment was ren-

dered for the plaintiff. From that judgment an appeal was taken by the defendant to the Supreme Court of this District, where, after trial *de novo* before a jury, a judgment was rendered in favor of the plaintiff for $96.55, and from which judgment the defendant has taken an appeal to this court. The plaintiff in the judgment contends that the appeal to and determination by the Supreme Court of the District is final, and that there can be no further appeal to this court. If that contention be well founded, of course, this appeal must be dismissed.

The determination of this motion to dismiss involves a question of the proper construction of several of the sections of the new code enacted by Congress for this District; the sections involved being those relating to civil actions instituted before justices of the peace, and appeals therefrom. The act of Congress of March 3, 1901, Ch. 854 (31 Stat., p. 1189), is entitled "An act to establish a code of law for the District of Columbia," and whereby it is declared " That the following is hereby enacted and declared to be a code of law for the District of Columbia, to go into effect and operation from and after the first day of January, in the year 1902." The code thus enacted is divided into chapters, with many subdivisions and titles, to embrace the contents of the entire enactment.

In Chapter 1 of this code, under title, " Justices of the Peace," there are several sections that have more or less bearing upon the question presented. They are as follows:

" Section 7. Jury trial.— Trial by jury before justices of the peace is hereby abolished."

Section 8 provides, " That in all cases of *concurrent jurisdiction* the *defendant* may remove the case for trial into the Supreme Court of the District by a writ of *certiorari* (to be awarded by said court, or one of the justices thereof, upon petition under oath, the form and substance whereof shall be prescribed by said court.)"

" Section 9. Jurisdiction.— The said justices of the peace shall have jurisdiction in all civil cases in which the amount claimed to be due for debt or damages arising out of con-

tracts, expressed or implied, or damages for wrongs or injuries to persons or property, does not exceed three hundred dollars,   *   *   *   and said jurisdiction shall be exclusive when the amount claimed for debt or damages, or the value of personal property claimed does not exceed fifty dollars, and *concurrent* with the said Supreme Court when it exceeds fifty dollars."

" Section 30. Appeal.— Where the debt or demand, or the value of personal property claimed, exceeds five dollars, and in actions for the recovery of possession of real estate, as aforesaid, either party who may think himself aggrieved by the judgment or other final order of a justice of the peace, may appeal to the Supreme Court of the District."

Under title, " Supreme Court of the District of Columbia," it is provided by —

" Section 80. That, on such appeal, the Circuit Court shall, in a summary way, hear the case *de novo* upon the proofs and allegations of the parties and determine the same according to the law and the equity and the right of the matter; but either party may demand a trial by jury."

" Section 82.   In *no case appealed* from a justice of the peace shall there be *any further appeal* from the judgment of the Circuit Court."   This is clear and positive.

But under title, " Court of Appeals," occurs the provision:

" Section 226. Jurisdiction.— Any party aggrieved by any final order, judgment, or decree of the Supreme Court of the District of Columbia, or of any justice thereof, ' including any final order or judgment in any case heard on appeal from a justice of the peace,' may appeal therefrom to the said Court of Appeals; and upon such appeal," etc.

These are all the provisions that would appear to have any relation to the question under consideration; and from them it would appear that there is difficulty in reconciling and making consistent section 82 with the provision contained in section 226, if we adhere strictly to the literal terms employed in the latter section.   Indeed, it is clear that both provisions, according to the strict letter of the statute, will not stand together; one must yield and become a nullity

in order to give the other effect, if we adopt the literal meaning of the terms employed in section 226. Congress certainly did not intend to produce any such result in the enactment of these provisions, but, on the contrary, intended each provision to have effect. We think, however, the apparent conflict and difficulty, growing out of the language employed in section 226, may be removed, and the sections reconciled and made consistent, by the application of a few well-established rules of construction of statutes.

In the first place, these provisions of the code must be construed in the light of the pre-existing law, the reason of the matter, and also in view of the consequences that would be produced by adopting the contention of the appellant; that is to say, that the provision of section 226, being the later provision of the code, should prevail, to the exclusion of the positive provision contained in section 82. This theory of the last expression of the legislature is the only argument that has been or can be invoked in support of the contention of the appellant. By that argument, the provision so clearly and positively expressed by section 82 is utterly nullified, as if it were no part of the code. Was this the intention of Congress, and should such be the construction? Why thus nullify and strike out section 82, in order to give force and literal effect to the provision contained in section 226? While there may be some cases found that give countenance to such contention, yet the decided weight of decision is, that such construction should never be adopted except upon the most urgent and irresistible reason. It would seem to be well settled that a code, or body of revised laws, should be regarded as a system of contemporaneous acts, as established *uno flatu;* or as a simultaneous expression of the law maker. Its various sections relating to the same subject should, if practicable, be construed together, as one; as one act or chapter, or as continuous sections of the same act; and one chapter is to be read with another, relating to the same subject, as one body of law, though collected from independent laws of previous enactment, originally passed at different times and re-enacted

by a revisory act. If possible, the various portions of such code or revision must be construed as to harmonize with one another. Its general system of legislation upon the subject matter should be taken into view, and any particular article construed in conformity therewith, unless an intention to depart from it be clearly shown; and definitions contained in it are to be construed with reference to its positive enactments *in pari materia.* Endlich on Interp. of Stats., Sec. 40, and cases there cited.

It is an established rule in the exposition of statutes, says Chancellor Kent, "that the intention of the law giver is to be deduced from a view of the whole, and of every part of a statute, taken and compared together. The real intention, when accurately ascertained, will always prevail over the literal sense of the terms. When the expression in a statute is special or particular, but the reason is general, the expression should be deemed general. *Scire leges, non hoc est verba earum tenere sed vim ac potestatem,* and the reason and intention of the law giver will control the strict letter of the law, when the latter would lead to palpable injustice, contradiction, and absurdity." 1 Kent Com. 461–2. And as illustrative of this principle of construction, it is stated by the same learned author, that a saving clause in a statute will be rejected, when it is directly repugnant to the purview or body of the act, and could not stand without rendering the act inconsistent and destructive of itself. Ib.

And so it is an established rule, that where words are obscure or doubtful, the intention of the legislature is to be resorted to in order to find the meaning of the words as employed in the statute. A thing which is within the intention of the makers of the statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute, is not within the statute unless it be within the intention of the makers of it. *People* v. *Utica Ins. Co.,* 15 Johns. 358, 380. And so, therefore, that which is within the letter of the statute, may sometimes not be within the statute, not being within the intention of

the makers. " If laws and statutes seem contrary to one another, yet if by interpretation they may stand together, they shall stand;" and where two laws only so far disagree or differ, as that by any other construction they may both stand together, the rule that *Leges posteriores, priores contrarias abrogant,* does not apply, and the latter is no repeal of the former. Roll. Rep. 90, 91; 2d Co. Rep. 5, 6; 19th Vin. Abr. 519, 525; 4 Gill & Johns. 152, *Canal Co.* v. *Railroad Co.*

The rule is very clearly stated by Mr. Chief Justice Fuller, speaking for the Supreme Court, in the case of *Petri* v. *Commercial Bank,* 142 U. S. 644, 650. In that case, he said: " The rule that every clause in a statute should have effect, and one portion should not be placed in antagonism to another, is well settled; and it is also held that it is the duty of the court to ascertain the meaning of the legislature from the words used and the subject-matter to which the statute relates, and to restrain its operation within narrower limits than its words import, if the court is satisfied that the literal meaning of its language would extend to cases which the legislature never intended to include in it." See also case of *Bernier* v. *Bernier,* 147 U. S. 242.

It is difficult to suppose that it was ever the intention of Congress, by the adoption of section 226 of the code, to give the right of appeal to this court in all cases of appeal from justices of the peace to the Supreme Court of this District; even though the amount in controversy barely exceeded five dollars. Yet the words employed in the section, if taken literally, would seem to confer the right. When the demand in controversy exceeds fifty and does not exceed three hundred dollars, the suit therefor may be brought either before a justice of the peace or in the Supreme Court of the District, and if brought before a justice of the peace, the *defendant* may remove the case to the Supreme Court of the District by *certiorari* for trial in the first instance, or he may have a trial before the justice of the peace, from whose judgment either party may appeal to the Supreme Court of the District. If the case be removed into the Su-

preme Court by *certiorari*, and be there tried, and judg-
ment rendered, then either party may appeal to this court.
If the words in section 226, instead of being read as applying
to appeals strictly as such from justices of the peace, be
read as applying to final orders or judgments in any case
heard on return of *certiorari* by or from a justice of the
peace, the apparently conflicting provisions of sections 82
and 226 would be made to harmonize and be rendered con-
sistent, the one with the other, and would consist throughout
with the general scheme of the statute relating to civil ac-
tions brought before justices of the peace. And this, we
think, is the fair and rational construction to be placed upon
the terms employed in section 226; as thereby all the pro-
visions of the code relating to this subject are given full
effect and operation, and none rendered null and of non-
effect, by reason of the apparent conflict between sections
82 and 226, such as would be the case if the contention of
the present appellant were sustained. We know that, in
popular understanding, the proceeding by *certiorari* is re-
garded as in its nature an appellate proceeding, and in many
jurisdictions it is made so in reality. Considering the en-
tire subject, and all the provisions of the code relating
thereto, we think it a reasonable inference that the pro-
ceeding referred to in section 226, as originating with, and
coming from, a justice of the peace, into the Supreme Court
for trial and judgment, is the proceeding authorized to be
brought therein by *certiorari*, and not technically an appeal.
By this construction, effect is given to the provision incor-
porated in section 226, and section 82 is allowed to stand
and have operation, whereby it is declared, in accordance
with the pre-existing law, that " In no case appealed from a
justice of the peace shall there be any further appeal from
the judgment of the circuit court."

This being our conclusion, it follows that this appeal is
improperly here, and it must therefore be dismissed; and
it is so ordered.                    *Appeal dismissed.*

On the 10th day of July, 1902, *Mr. Maddox,* for the appellant, moved to vacate the order dismissing the appeal and for a rehearing, and filed a brief in support of his motion:

The appeal has been dismissed by this court for the reason that a fair interpretation of the conflicting provisions of Secs. 82 and 226 of the code limits the jurisdiction of this court to hearing and determining cases originating before a justice of the peace to such cases as are brought into the Supreme Court of the District of Columbia by *certiorari* and not by appeal.

To reach this conclusion the court, in effect, rules that the words " on appeal," as used in section 226, are synonymous with " on *certiorari.*" But it is respectfully submitted that these words are nowhere so used in any law in force in the District of Columbia or in any reported case decided by our courts. Furthermore, when this action was brought the defendant could not have brought the case to the Supreme Court of the District of Columbia by proceedings in *certiorari,* the justice of the peace having concurrent jurisdiction. *Hendley* v. *Clark,* 8 App. D. C. 165. So there was no method left him whereby he could secure the judgment of this court upon his contentions except on appeal from an adverse judgment. His only way of reaching the Supreme Court of the District of Columbia was by *appeal,* as that word is always used and understood in this jurisdiction.

The intention of Congress is clearly indicated in recent amendments to the code whereby section 82 is repealed and section 226 retained in full force. This may be considered a legislative interpretation and an express declaration by Congress that aggrieved parties to causes originating before justices of the peace shall have the ultimate right of appeal to this court. It would seem almost an anomaly to hold that if he first sued out a writ of *certiorari* to the Supreme Court of the District of Columbia he might then appeal to this court from an adverse judgment of the latter tribunal, but could not secure the ruling of this court on his contentions by proper appeal proceedings. Rather would it ap-

pear that Congress had in mind giving aggrieved parties the same substantial rights, whether they proceeded by writ of *certiorari* or appeal.

The argument ought not to prevail that to entertain the appeal in this case would or might unduly incumber the dockets of this court with petty controversies. Congress has determined that hereafter this court shall take jurisdiction of these controversies, and there are but two such cases pending here where the appeals were taken prior to the adoption of the amendments to the code. To deny the right of appellant to have his appeal heard would mean failure on his part to secure equal protection of the laws.

The motion was overruled by the court on the 15th day of October, 1902, Mr. Chief Justice ALVEY delivering the opinion:

There is a motion made in this case for rehearing on the motion to dismiss the appeal, and which is founded upon the recent act of Congress of June 30, 1902, providing various amendments to the District code. By this amendatory act sections 81 and 82 of the code are repealed, without substituting any other provisions in their stead; and it is supposed that this is a Congressional construction of section 226 of the code, to the effect that the right of appeal was intended to be secured to this court from the Supreme Court of the District from any final order or judgment in any case heard on appeal from a justice of the peace. In disposing of the motion to dismiss the appeal in this case, we so construed the apparently conflicting sections 82 and 226 of the code as to give effect to both sections, as we were required to do by established canons of construction. The code was adopted as an entirety, and as a single legislative act, and no one part or section of it could in reason be said to be the last expression of legislative will. If in the amendatory and repealing act, passed after the appeal was disposed of by this court, Congressional construction is to be accepted as to the meaning originally intended by section 226, then

(from) the fact that it was deemed necessary to repeal section 82, in order to give force and effect to section 226, it would follow that while both sections remained unrepealed they neutralized and frustrated each other, and neither could be allowed effective operation. This would leave the law as it existed prior to the adoption of the code in full force, that is to say, without any effective statutory right of appeal to this court, in cases like the present; and that being the case, the appeal taken in this case could not be sustained. In any aspect, therefore, this appeal would have to be dismissed.                 *Motion for rehearing overruled.*