**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, Loran W. Robbins; Marion M. Winstead; Harold J. Yates; Robert J. Baker; Howard McDougall; Arthur H. Bunte, Jr.; Earl L. Jennings, Jr. and R.W. Pulliam, Plaintiffs,**

**v.**

**EKCO PRODUCTS, INC. and American Home Products, Inc., Defendants.**

**No. 82 C 7503.**

United States District Court, N.D. Illinois, E.D.

Feb. 15, 1984.

---

Kathleen M. Deane, Central States Legal Div., Chicago, Ill., for plaintiffs.

Charles R. McKirdy, Adrianne C. Mazura, Pope, Ballard, Shepard & Fowle, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund, Loran W. Robbins, Marion M. Winstead, Harold J. Yates, Robert J. Baker, Howard McDougall, Arthur H. Bunte Jr., Earl L. Jennings, Jr. and R.V. Pulliam ("the Fund") sued Ekco Products, Inc. and American Home Prod-

ucts Corp. ("Ekco")[1] for failure to make contributions allegedly due to the Fund from February 5, 1969, to the present.[2] Jurisdiction is asserted pursuant to § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) and § 502(e)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. Presently before the Court are the parties' cross-motions for summary judgment. For reasons set forth below, the Fund's motion is denied, and Ekco's motion is granted.

## FACTS

The Fund is a common law pension trust established pursuant to 29 U.S.C. § 186(c)(5). From, at least November 5, 1966, to the present, Ekco has had a collective bargaining agreement with Teamster Local No. 714 ("Union"). In the 1966–1969 collective bargaining agreement, Ekco agreed with the Union to contribute to the Fund in lieu of the company's pension plan. There was disagreement concerning exactly when Ekco would be required to make contributions on behalf of new employees. The Fund sought contributions after thirty days of employment ("the thirty day rule"), while Ekco sought to contribute after twelve months of service ("the one year rule"). Controversy over which of these two rules is applicable has resurfaced and is the crux of the present matter.

According to the Fund, Ekco was permitted to follow the one year rule for the duration of the 1966–1969 collective bargaining agreement, since upon Ekco's admission into the Fund in April, 1967, the

collective bargaining agreement was not subject to reopening. But compliance with the thirty day rule starting in 1969 was, according to the Fund, an express condition of Ekco's admission into the Fund. An "Employer Agreement" proposed by Ekco and executed by the parties stated that Ekco

accepts the terms and provisions of the Agreement and Declaration of Trust as modified by Exhibit "A" of the current labor agreement between the parties.

Exhibit A required Ekco to pay a monthly sum to the Fund

for each eligible employee in the bargaining unit who has reached his first annual anniversary....

Article 9.3 of the 1966–1969 collective bargaining agreement contained a clause which incorporated the Pension Plan between the parties as well as Exhibit A, with the one year rule.

In a letter from the Fund to the Union and Ekco, dated April 21, 1967, Edward J. Murtha declared that

[t]he Trustees have instructed me to inform you that they have accepted the group into the plan with the provision, however, that when you renegotiate your contract, you must comply with our ruling that pension must be paid on all employees who have been on the payroll for thirty days.

Ekco's representative in these matters, viewed the reference in Murtha's letter to the thirty day rule as a matter that was negotiable at the onset of negotiations for the next collective bargaining agreement.[3]

---

1. Ekco Products, Inc. is a subsidiary of American Home Products Corp. Ekco Housewares Co. is a division of American Home Products Co. Both entities are parties to a collective bargaining agreement with Teamsters Local 714. For purposes of the present opinion, we will identify defendants as "Ekco."

2. Count I of the Second Amended Complaint avers that Ekco's noncompliance with the Fund's pension plan violates § 515 of ERISA, 29 U.S.C. § 1145:

   [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a

collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Counts II and III are pendent state law claims involving breach of an implied agreement and an estoppel theory.

3. It appears that the parties' intentions with respect to the series of negotiations in 1966 and 1967 are highly disparate. Questions of intent and motive are particularly inappropriate for resolution on a motion for summary judgment. *Askew v. Bloemker,* 548 F.2d 673, 679 (7th Cir.

The 1969–1972 collective bargaining agreement did not contain the thirty day rule. Rather, the agreement contained a clause which declared that

> [a]ll the terms and conditions of the existing contract shall remain in full force and effect except as modified by the attached changes and improvements in the Agreement.

Article 9.3 of the 1969–1972 agreement was identical to Article 9.3 in the 1966–1969 agreement. While Article 9.3 states that Exhibit A is attached to the collective bargaining agreement, Exhibit A was not attached to the Agreement. The parties have stipulated that Article 9.3 in the 1966–1969 collective bargaining agreement is identical to Article 9.3 in all subsequent collective bargaining agreements, including the present agreement.

In 1976, auditors discovered that Ekco had made some contributions pursuant to the thirty day rule. A Fund auditor granted credit to Ekco for these contributions. In 1978, the Fund notified the Union and Ekco that Exhibit A of the 1978–1981 collective bargaining agreement, with its one year rule, "does not comply with the policies and requirements set forth" by the Fund. The Fund took no further action until 1980, when it ordered an audit of Ekco. In 1981, Ekco and the Union entered into a collective bargaining agreement, which again contained Article 9.3, with its reference to Exhibit A and the one year rule. The Fund filed this lawsuit in December of 1982.

■■■ In considering motions for summary judgment, we emphasize that the "party moving for summary judgment has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in his or her favor." *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1,* 603 F.2d 7, 10 (7th Cir.1979); any doubts as to the existence of material issues of fact must be resolved

against the moving party. *Moutoux v. Gulling Auto Electric, Inc.,* 295 F.2d 573, 576 (7th Cir.1961). The non-moving party is entitled to all reasonable inferences that can be made in its favor from the evidence presented, *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Where cross-motions for summary judgment are involved, courts must rule on each motion individually, keeping in mind that whether material factual issues exist is not dependent upon the views of the parties. 10A C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure* 2d (1983). The Fund argues that as a result of a series of transactions and conduct, Ekco contractually agreed to follow the thirty day rule, and that it breached that contract. Ekco maintains that it never agreed to comply with the thirty day rule, and that even if the Fund's claims are meritorious, they are barred by a statute of limitations, estoppel and waiver.

### Waiver and Estoppel

■■■ Ekco claims that even if the Fund had the right to insist upon adherence to the thirty day rule, it waived this right by accepting the one year rule from 1969 to 1978, when it first sought to enforce the thirty day rule. Prior to 1978, the sole communication Ekco had with the Fund concerning the thirty day rule was in the course of a 1976 audit, when a Fund auditor allegedly disclaimed an intention to enforce the thirty day rule. Additionally, Ekco asserts that the Fund is estopped by its conduct from attempting to enforce the thirty day rule. The Fund argues that the 1976 incident was a clerical error, and that the collective bargaining agreement between the Union and Ekco never reflected Ekco's intent to follow the one year rule.

The Seventh Circuit has defined waiver as "a voluntary and intentional relinquishment or abandonment of a known existing right or privilege, which, except for such

1976). But our resolution of the present motion on grounds of waiver and estoppel obviates a

need to consider the parties' intent.

waiver, would have been enjoyed." *Buffum v. Chase National Bank*, 192 F.2d 58, 60–61 (7th Cir.1951), *cert. denied*, 342 U.S. 944, 72 S.Ct. 558, 96 L.Ed. 702 (1952). Waiver therefore involves a consideration of the intent of the non-breaching party. *Saverslak v. Davis-Cleaver Produce Co.*, 606 F.2d 208, 213 (7th Cir.1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 762 (1980). Accordingly, we must examine whether the Fund manifested an intent not to require Ekco to strictly comply with the thirty day rule. *Graubremse GMBH v. Berg Mfg. & Sales Co.*, 417 F.2d 1201, 1204–05 (7th Cir.1969). Silent acquiescence in the elimination of a trademark from a product has been held to constitute waiver. *Saverslak*, 606 F.2d at 214. The Court in *Saverslak* added that the non-breaching party's acceptance of royalties, as well as its silence, evinced its intent to relinquish its rights. *Id.* See also *Graubremse GMBH*, 417 F.2d at 1205 (non-breaching party's acceptance of benefits was inconsistent with reliance upon the breached contractual requirement; continued performance manifests an intent to waive the requirement).

■ Estoppel, on the other hand, focuses upon the effects of an obligor's conduct on an obligee, and arises when a party's conduct misleads another to believe that a right will not be enforced and causes him to act to his detriment in reliance upon this belief. *Saverslak*, 606 F.2d at 213. This requires us to consider whether the Fund misled Ekco to believe that the thirty day rule would not be enforced and whether Ekco acted in reliance upon this belief.

■ The Fund makes a series of arguments against the application of waiver and estoppel. First, it claims that the absence of the one year rule in the 1969–1972 collective bargaining agreement reflected the parties' intent to comply with the thirty day rule. The fact that Ekco provided the Fund with monthly billing information, including date of hire and year to date contributions would not, according to Ekco, allow the Fund to learn that Ekco violated the

thirty day rule. The 1976 audit incident, in which a Fund auditor granted Ekco a credit for payments which had been made pursuant to the thirty day rule, was simply an error. The Fund in 1978 notified the Union and Ekco that the collective bargaining agreement contained "nonconforming" language (the one year rule); the Fund explains its lack of further efforts by asserting that it was relying upon the Union to bring about compliance. The Fund explains the fact that an audit was not held until 1980 by asserting that the Fund wished to "wait and see" whether the Union had been able to achieve compliance with the thirty day rule. Finally, the Fund accepted a 1981 collective bargaining agreement despite the fact that it contained identical references to Exhibit A and the one year rule, because the Fund preferred to strive for Ekco's voluntary compliance rather than ejecting Ekco from the Fund.

Assuming *arguendo* that there is merit in the Fund's assertion that Ekco breached a contract with it, we believe that the Fund waived its rights to enforce the thirty day rule. An examination of its conduct and inaction indicates that it "intentionally relinquished a known right." Notwithstanding the Fund's claims, it accepted pension contributions and processed contribution reports from Ekco from 1969 until 1978.

Every collective bargaining agreement between Ekco and the Union from 1966 to the present incorporated the one year rule. In 1976, Ekco received a credit for contributions which had been made pursuant to the thirty day rule. Only in 1978 did the Fund begin to take actions evidencing an intent to enforce the thirty day rule, when it informed the Union and Ekco that the collective bargaining agreement contained noncomplying language. The Fund's silent acquiescence from 1968 to 1978 at some point ripened into an intentional relinquishment of its right to enforce the thirty day rule. This, as well as the Fund's acceptance of contributions under the one year rule, are sufficient to constitute waiver.[4] *Saverslak*, 606 F.2d at 214.

---

4. The Fund insists that a waiver cannot be light-    ly inferred, but rather, must appear in clear and

Alternatively, the Fund is also estopped from enforcing the thirty day rule. The Fund's silent acquiescence in the one year rule and its acceptance of pension fund contributions led Ekco to believe that the thirty day rule would not be enforced, and that the one year rule was acceptable to the Fund. Ekco continued contributing to the Fund, and its arguments that it may have withdrawn from the Fund or negotiated other concessions from the Union if it had known that the Fund would insist upon application of the thirty day rule are reasonable. Under these circumstances, it would be unfair to allow the Fund to demand past contributions pursuant to the thirty day rule.

Accordingly, Ekco's motion for summary judgment is granted; the Fund's motion for summary judgment is denied. It is so ordered.

unmistakable language. *E.g., N.L.R.B. v. Southern California Edison Co.,* 646 F.2d 1352, 1364 (9th Cir.1981); *N.L.R.B. v. Wisconsin Aluminum Foundry Co.,* 440 F.2d 393, 399 (7th Cir.1971). *Wisconsin Aluminum,* however, involved the alleged waiver of a right embodied in the provisions of a collective bargaining agreement, the right to bargain about an employee bonus. *Southern California* concerned an alleged waiver of employee rights to engage in sympathy strikes. Neither case is germane to our present inquiry, which involves waiver of the Fund's right to insist upon a thirty day rule for employer pension fund contributions.